**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Gilbert Martinez,

          Petitioner,

v.

David Shinn, et al.,

          Respondents.

No. CV-20-00517-PHX-DJH

**ORDER**

DEATH PENALTY CASE

Before the Court are Respondents' Motion to Preclude Juror Contact (Doc. 13) and Motion for Order Precluding Defense Team from Contacting Victims (Doc. 14). Petitioner Gilbert Martinez opposes the motions. (Docs. 18, 19.)

**1.  Motion to Preclude Juror Contact**

Respondents ask the Court to enter an order precluding Martinez's defense team from contacting his trial jurors absent leave of Court based on a showing of good cause. Martinez contends that there is no binding authority for such a request. (Doc. 18 at 7.) He also argues that interviewing jurors is a "necessary component" of investigating his case.[1] (*Id.* at 2.)

Federal courts have long recognized that "very substantial concerns support the protection of jury deliberations from intrusive inquiry." *Tanner v. United States*, 483 U.S.

---

[1] Martinez also asserts that the order sought by Respondents would improperly burden the jurors' First Amendment rights. (Doc. 18 at 11.) The Court agrees with Respondents that Martinez has no standing to raise such a claim on behalf of the jurors.

107, 127 (1987). In *Tanner*, the Supreme Court acknowledged that post-verdict investigation into jury misconduct would lead in some instances to the discovery of improper juror behavior, but expressed concern that allegations "raised for the first time days, weeks, or months after the verdict, [would] seriously disrupt the finality of the process" and could undermine "full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople." *Id.* at 120–21.

Generally, a verdict may not be impeached on the basis of the jury's internal deliberations or the manner in which it arrived at its verdict. *Traver v. Meshriy*, 627 F.2d 934, 941 (9th Cir. 1980). Rule 606(b) of the Federal Rules of Evidence is grounded in this common-law rule against admission of jury testimony to impeach a verdict. On the other hand, although jurors may not be questioned about their deliberations and most matters related thereto, they may be questioned regarding any extraneous influence on their verdict. *Tanner*, 483 U.S. at 117; *Traver*, 627 F.2d at 941. Accordingly, Federal Rule of Evidence 606(b) allows jury testimony in limited circumstances to show that (1) extraneous prejudicial information was improperly brought to the jury's attention, (2) an outside influence was improperly brought to bear upon any juror, or (3) there was a mistake in the verdict form. *See Tanner*, 483 U.S. at 121; Fed. R. Evid. 606(b). An exception to Rule 606(b) also exists where a juror's statements indicate that racial animus was a significant motivating factor in his or her finding of guilt.[2] *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 869 (2017).

Martinez contends that there is no authority prohibiting his federal habeas counsel from interviewing jurors from his state criminal trial to discover admissible evidence of juror misconduct, or requiring him to show good cause prior to doing so. Nonetheless, despite there being no specific prohibition, post-verdict interviews with jurors are not looked on favorably in the Ninth Circuit, *Hard v. Burlington Northern R.R.*, 812 F.2d 482,

---

[2] The Court rejects Martinez's argument that information obtained from jurors is admissible with respect to claims of ineffective assistance of counsel. *See Garza v. Ryan*, No. CV-14-01901-PHX-SRB, 2016 WL 4591854, at *2 (D. Ariz. Sept. 2, 2016) (collecting cases).

485 (9th Cir. 1987), *abrogated on other grounds by Warger v. Shauers*, 574 U.S. 40 (2014), and the district courts have "'wide discretion' to restrict contact with jurors to protect jurors from 'fishing expeditions' by losing attorneys." *See United States v. Wright*, 506 F.3d 1293, 1303 (10th Cir. 2007) (quoting *Journal Pub. Co. v. Mechem*, 801 F.2d 1233, 1236 (10th Cir. 1986)).

While this Court's local rules do not prohibit Martinez's counsel from contacting and interviewing jurors from his trial, neither do they specifically authorize such contact. The local rules do recognize that approval for the interview of federal jurors will only be granted when proposed written interrogatories are submitted to the court within the time granted for a motion for a new trial, and only upon a showing of good cause. *See* LRCiv 32.9(b) (citing Fed. R. Evid. 606(b)). While there is no corresponding rule prohibiting counsel from invading the provenance of state jurors in federal habeas proceedings, the absence of a rule is not dispositive, as the Court is no less concerned with the protection of state jurors than federal jurors, and has the discretion to address these concerns on a case by case basis.

In addition to the policy concerns expressed in *Tanner*, there are "very cogent reasons" for requiring a preliminary showing of illegal or prejudicial intrusion into the jury process before allowing counsel to conduct post-trial interviews. These include protecting the jury from post-verdict misconduct and the courts from time consuming and futile proceedings; reducing the chances and temptations for tampering with the jury; and increasing the certainty of verdicts. *Wilkerson v. Amcon Corp*, 703 F.2d 184, 185–86 (5th Cir. 1983) ("We continue to decline to 'denigrate jury trials by afterwards ransacking the jurors in search of some ground . . . for a new trial' unless a preliminary showing is made.") (additional citation omitted). The reluctance of courts to inquire into the conduct of jurors during deliberations is also "to avoid harassment of jurors, inhibition of deliberation in the jury room, a deluge of post-verdict applications mostly without real merit, and an increase in opportunities for jury tampering; it is also to prevent jury verdicts from being made more uncertain." *King v. United States*, 576 F.2d 432, 438 (2d Cir. 1978) ("To overcome this reluctance and to authorize a post-verdict inquiry, there must be 'clear evidence,' 'strong

- 3 -

1  evidence,' 'clear and incontrovertible evidence,' 'substantial if not wholly conclusive

2  evidence.'") (additional citation omitted). Finally, the Ninth Circuit has held that "there is

3  no federal constitutional problem involved in the denial of a motion to interrogate jurors

4  where . . . there has been no specific claim of jury misconduct." *Smith v. Cupp*, 457 F.2d

5  1098, 1100 (9th Cir. 1972).

6          Therefore, the Court finds that the proper way for Martinez to proceed is first to

7  make a preliminary showing that extraneous prejudicial information or outside influence

8  was improperly brought to the jury's attention, or evidence that a juror was motivated by

9  racial animus, and seek leave of the court to approach the jury. *See Hard*, 812 F.2d at 485

10  n.3. Good cause may be shown by satisfying the requirements of the exceptions stated in

11  Rule 606(b) and *Pena-Rodriguez.*

12          Martinez asserts that the holding in *Pena-Rodriguez* renders the above analysis

13  "inapposite." (Doc. 18 at 8.) The Court disagrees. *Pena-Rodriguez* simply added an

14  exception to Rule 606(b)'s limitations on post-verdict juror testimony. The holding did not

15  foreclose a court from imposing a good cause requirement on juror contact. *See Mitchell v.*

16  *United States*, 958 F.3d 775, 787 (9th Cir. 2020) ("[I]n cases where there has been no

17  showing of juror misconduct, we have held that a district court 'd[oes] not abuse [its]

18  discretion in refusing to allow postverdict interrogation of jurors.'") (quoting *United States*

19  *v. Eldred*, 588 F.2d 746, 752 (9th Cir. 1978)); *Smith*, 457 F.2d at 1100.

20          **2.  Motion for Order Precluding Defense Team from Contacting Victims**

21          Respondents move the Court for an order precluding Martinez's defense team from

22  directly contacting any victim in this case and directing that the team instead initiate any

23  such contact through the Office of the Arizona Attorney General. (Doc. 14 at 2.) In support

24  of their request, Respondents cite provisions of state and federal law, including A.R.S. §

25  13–4433(B), which provides that "[t]he defendant, the defendant's attorney or an agent of

26  the defendant shall only initiate contact with the victim through the prosecutor's office,"

27  and the Crime Victims' Rights Act (CVRA), which affords state crime victims in federal

28  habeas cases "the right to be treated with fairness and with respect for the victim's dignity

and privacy." 18 U.S.C. § 3771(a)(8).

- 4 -

1    Martinez opposes the motion, arguing that the request is not supported by state or

2    federal law, that counsel are obligated to perform an investigation that may include contact

3    with victims, and that the request is premature. (Doc. 19.) The Court disagrees.

4    In other capital habeas cases in this district, the court has considered and rejected

5    these arguments, ordering petitioners to obtain consent through Respondents' counsel

6    before contacting a victim and, in the event a victim did not consent, ordering briefing on

7    the applicability of Arizona's victims' rights laws. *See, e.g.*, *Sansing v. Ryan*, No. 11-CV-

8    1035-PHX-SRB (D. Ariz.); *Chappell v. Ryan*, No. CV-15-00478-PHX-SPL (D. Ariz.);

9    *Pandeli v. Ryan*, No. CV-17-1657-PHX-JJT (D. Ariz.). In *Sansing*, the court explained that

10   its "directive requiring Petitioner to obtain consent from Respondents' counsel to contact

11   victims furthers the rights to dignity and privacy set forth in § 3771(a)(8). It is a reasonable

12   limitation that does not unfairly disadvantage Petitioner." *Sansing*, No. 11-CV-1035-PHX-

13   SRB (D. Ariz.) (Doc. 29); *see Roseberry v. Ryan*, No. 15-CV-1507-PHX-NVW (D. Ariz.)

14   (Doc. 18).

15   Martinez's arguments do not alter this analysis. Whether or not § 13–4433(B)

16   directly applies to these proceedings through the CVRA, the mechanism it establishes

17   furthers the goal of respecting a crime victim's dignity and privacy without unduly

18   burdening Martinez. *See, e.g.*, *Chappell*, No. CV-15-00478-PHX-SPL (D. Ariz. Jul. 21,

19   2015) (Doc. 19). "Using counsel for Respondents to channel requests to contact victims,

20   as contemplated by the CVRA itself, 18 U.S.C. § 3771(b)(2)(B)(i) and (d)(1), does not

21   unduly burden [petitioner's] access to the victims."[3] *Pandeli v. Ryan*, No. CV-17-1657-

22   PHX-JJT (D. Ariz. Oct. 5, 2017) (Doc. 23).

23   Finally, the Court rejects Martinez's argument that an order granting the relief

24   sought by Respondents would unconstitutionally burden habeas counsel's First

25   Amendment rights. (Doc. 19 at 11–12.) "[A]ttorneys are properly subject to an array of

26   different restrictions and regulations that can have the effect of limiting their ability to

27   obtain    information—even    potentially    exculpatory    information—from    prospective

28   _____

[3] Under 18 U.S.C. § 3771 (d)(1), the "attorney for the Government may assert" the crime victim's rights.

- 5 -

witnesses." *Johnson v. Ryan*, No. CV-18-00889-PHX-DWL, 2018 WL 6573228, at *6 (D. Ariz. Dec. 13, 2018) (citing Ariz. R. Prof. Conduct, ER 4.1(a); Ariz. R. Prof. Conduct, ER 4.2; and LRCiv 39.2(b)).

Accordingly,

**IT IS HEREBY ORDERED granting** Respondents' Motion to Preclude Juror Contact (Doc. 13). Martinez may not contact any jurors other than by leave of Court upon a showing that extraneous prejudicial information or outside influence was improperly brought to the jury's attention, or where there is evidence of racial animus affecting the verdict. *See* Fed. R. Evid. 606(b); *Pena-Rodriguez*, 137 S. Ct. at 869.

**IT IS FURTHER granting** Respondents' motion for order precluding contact with victims (Doc. 14). No person who is defined as a victim in this matter pursuant to Arizona law shall be contacted by anyone working with or on behalf of Martinez or Martinez's counsel unless the victim, through counsel for Respondents, has consented to such contact. If consent is not provided and Martinez nonetheless believes the contact is necessary, Martinez may file a motion with the Court explaining the necessity for such contact.

Dated this 1st day of July, 2020.

Honorable Diane J. Humetewa
United States District Judge

- 6 -